*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* JGS, Jr.

SETH W. WEINBURGER,

        Petitioner-Appellee,

v

JGS, JR.,

        Respondent-Appellant.

UNPUBLISHED
December 11, 2025
1:36 PM

No. 374789
Kent Probate Court
LC No. 22-930664-MI

Before: M. J. KELLY, P.J., and REDFORD and FEENEY, JJ.

PER CURIAM.

Respondent, JGS, Jr., appeals as of right the trial court's order granting a petition for mental-health treatment, contending that the petition violated the Michigan Mental Health Code, MCL 330.1001 *et seq.*, because the trial court found that the petition and accompanying clinical certificates were timely and that respondent was not a person requiring treatment as defined under the Mental Health Code. We affirm.

## I. FACTUAL BACKGROUND

This case arises from respondent's challenges with his mental health, dating back to 2022. Most recently, on January 22, 2025, a social worker petitioned the trial court to order respondent to undergo a mental-health examination and treatment after respondent made several police reports alleging that "drones, satellites, and Russian spies" were following and harassing him. A psychiatrist described respondent as "paranoid," "delusional," and "grandiose," and respondent reported taking pictures of random cars and individuals. After a hearing on the petition, the probate court ordered an officer to take respondent into protective custody and transport him to a designated hospital. Additionally, the court ordered respondent to take part in an examination by a psychiatrist and a physician or licensed psychologist.

-1-

The next day, on January 23, 2025, psychiatrist Umer Faroq examined respondent via telehealth and diagnosed him with "unspecified psychosis." Dr. Faroq determined that respondent was a "person requiring treatment under the Mental Health Code and" required "hospitalization pending the hearing." Respondent was hospitalized on January 24, 2025, at Forest View Psychiatric Hospital. On January 27, 2025, psychiatrist Muhannad Kassawat examined respondent at 10:00 a.m. He determined that respondent was "a person requiring treatment under the Mental Health Code" and required "hospitalization pending the hearing." Dr. Kassawat described respondent as "psychotic, manic, and delusional" and diagnosed him with "[u]nspecified psychosis."

On January 28, 2025, the trial court sua sponte dismissed the January 22 petition, finding that the clinical certificates were "untimely pursuant to MCL 330.1430." The trial court dismissed the petition and ordered that respondent be "released and discharged from protective custody." The same day, Seth W. Weinburger, an agency worker and court liaison, petitioned the trial court to order mental-health treatment for respondent. Dr. Kassawat examined respondent a second time on January 28, 2025, and concluded that he was "a person requiring treatment under the Mental Health Code" and diagnosed him with "unspecified psychosis." On January 29, 2025, another psychiatrist examined respondent at 9:00 a.m., diagnosed him with "psychosis," and recommended a combination of hospitalization and assisted outpatient treatment. Later that day, petitioner filed a "corrected" petition to fix a clerical error.

On February 4, 2025, the trial court conducted a mental-health hearing. Respondent moved to dismiss at the outset, contending that the clinical certifications were completed after respondent was hospitalized for 24 hours, in violation of MCL 330.1438. The trial court acknowledged that it dismissed the case previously for untimely certifications but maintained that "the second round of the petitions and cert[ification]s" were timely. The court further explained that "the notice of hospitalization in a way is incorrect" because respondent "was hospitalized on the 24th, but then it was dismissed. So then, they start the clock again." The trial court denied defense counsel's motion to dismiss.

Hassan Almaat, a licensed psychiatrist, testified at the hearing. Dr. Almaat explained that he had interviewed respondent and reviewed his medical records, leading him to the conclusion that respondent had "unspecified psychosis." Dr. Almaat did not believe that respondent was a danger to himself or others; however, he believed that respondent's delusions put him "at a high risk to be dangerous." Dr. Almaat recommended hospitalization up to 60 days with 180 days alternative treatment.

After Dr. Almaat testified, respondent testified about his medical history, hospitalizations, and events leading to hospitalization. Respondent recalled "dropping off evidence to the Grand Rapids Police Department for a couple months," which included recordings of "military talk," mentions that he is on a "hit list," and the use of "certain lasers from drones." When questioned by the court, respondent admitted to previously being hospitalized at least two times and admitted that he stipulated to mental-health treatment in 2022. Respondent denied suffering from a mental-health diagnosis and requested the trial court to "initiate an investigation" and discharge the case.

By clear and convincing evidence, the trial court found that respondent suffered from "unspecified psychosis" and was "a person requiring treatment under the Michigan Mental Health

Code." The trial court found that respondent's mental illness caused escalating behavior over the previous three years, which made him "a substantial risk of significant physical harm to others" and "concerned" the court. In an order dated February 4, 2025, the trial court ordered respondent to a combined treatment of hospitalization and outpatient services for no longer than 180 days, with an initial hospitalization period up to 60 days. This appeal followed.

## II. STANDARD OF REVIEW

We review questions of law, including whether a party complied with a statute, de novo. *Natural Resources Defense Council v Dep't of Environmental Quality*, 300 Mich App 79, 90; 832 NW2d 288 (2013). "This Court reviews for an abuse of discretion a probate court's dispositional rulings and reviews for clear error the factual findings underlying a probate court's decision." *In re Portus*, 325 Mich App 374, 381; 926 NW2d 33 (2018) (quotation marks and citation omitted). "A probate court's finding is clearly erroneous when a reviewing court is left with a definite and firm conviction that a mistake has been made, even if there is evidence to support the finding." *Id*. (quotation marks and citation omitted). A probate court abuses its discretion when it "chooses an outcome outside the range of reasonable and principled outcomes." *Id*. (quotation marks and citation omitted).

## III. HOSPITALIZATION AND CLINICAL CERTIFICATES

Respondent first argues the trial court erred by entering the February 4, 2025 order because the hospital failed to comply with the statutory requirements for clinical certificates and hearings. Although respondent was not discharged as the trial court's dismissal order required, we conclude that the trial court did not abuse its discretion by entering the February 4, 2025 order.

The Mental Health Code, MCL 330.1001 *et seq*., provides that "[i]ndividuals shall receive involuntary mental health treatment only pursuant to the provisions of this act." MCL 330.1403. The Mental Health Code provides the statutory framework for imposing involuntary mental-health treatment on an individual, including "civil commitment" proceedings. *In re Portus*, 325 Mich App at 382. "[C]ivil commitment proceedings in Michigan implicate important liberty interests, protected by due process, that belong to the person who is the subject of a petition for involuntary mental health treatment." *In re Londowski*, 340 Mich App 495, 508; 986 NW2d 659 (2022). "Due process requires that a party receive notice of the proceedings against it and a meaningful opportunity to be heard." *In re Jestila*, 345 Mich App 353, 356; 5 NW3d 362 (2023) (quotation marks and citation omitted). This Court's analysis must balance "the individual's interest in not being subject to involuntary mental health treatment against the state's interest in compelling mental health treatment for a particular individual." *In re Londowski*, 340 Mich App at 509.

Involuntary civil commitment proceedings may be initiated in several ways, including by medical certification, MCL 330.1423, or by petition, MCL 330.1334. Under MCL 330.1423, a petition to hospitalize the individual may be presented to the hospital pending the receipt of medical certification:

> A hospital designated by the department or by a community mental health services program shall hospitalize an individual presented to the hospital, pending receipt of a clinical certificate by a psychiatrist stating that the individual is a person

requiring treatment, if a petition, a physician's or a licensed psychologist's clinical certificate, and an authorization by a preadmission screening unit have been executed. For an individual hospitalized under this section, a petition shall have been executed not more than 10 days before the presentation of the individual to the hospital, and the petition must meet the conditions set forth in section 434(1) and (2).

When hospitalized under MCL 330.1423, a respondent may only be detained for 24 hours and "must be examined by a physician or a licensed psychologist unless a clinical certificate has already been presented to the hospital." MCL 330.1429(1). Additionally, a respondent hospitalized under MCL 330.1423 must "be examined by a psychiatrist" no "later than 24 hours, excluding legal holidays, after hospitalization." MCL 330.1430. Under MCL 330.1438, "[i]f the examinations and clinical certificates of the psychiatrist, and the physician or the licensed psychologist, are not completed within 24 hours after hospitalization, the individual must be released."

In this case, a petition seeking mental-health treatment for respondent was filed on January 22, 2025, and the trial court issued an order to take respondent into protective custody. Respondent was hospitalized on January 24, 2025. Psychiatrist Kassawat examined respondent three days later, on January 27, 2025. On January 28, the trial court sua sponte dismissed the January 22 petition because the clinical certificates were untimely under MCL 330.1430. The trial court ordered that respondent be "released and discharged from protective custody." The trial court correctly ordered the dismissal of the petition and release of respondent from protective custody because respondent was not examined within 24 hours from the time he was hospitalized.

Rather than discharging and releasing respondent, a new petition seeking mental-health treatment for respondent was filed on January 29. New clinical evaluations were performed on January 28 and 29. At the mental-health hearing held on February 4, respondent moved to dismiss the petition under MCL 330.1438, contending that the clinical certifications were completed after respondent was hospitalized for 24 hours. The trial court denied respondent's motion, explaining that it dismissed the case previously for untimely certifications but maintained that the second set of petitions and certifications were timely. The court further explained that "the notice of hospitalization in a way is incorrect" because respondent "was hospitalized on the 24th, but then it was dismissed. So then, they start the clock again."

On this record, we do not find error in the trial court's determination that respondent's hospitalization started anew on January 28. Nothing in the Mental Health Code precluded the filing of the new petition, and under the new petition, the medical certificates were timely completed within 24 hours. Psychiatrists examined respondent at 10:00 a.m. on January 28 and at 9:20 a.m. on January 29, respectively, in compliance with the 24-hour requirement under MCL 330.1438. That respondent was not formally discharged from the hospital when the petition process was restarted is not fatal because the petition and medical certifications were timely from the date of the trial court's order of dismissal. We conclude that the trial court's treatment of January 28 as the date of respondent's hospitalization was reasonable when considering the balance between "the individual's interest in not being subject to involuntary mental health treatment against the state's interest in compelling mental health treatment for a particular individual." *In re Londowski*, 340 Mich App at 509. Likewise, the trial court did not violate

respondent's right to a speedy trial under MCL 330.1452(1)(a). January 28, 2025, was "the date on which the petition and certificates were received," and the trial court conducted a hearing within seven days, on February 4, 2025. See MCL 330.1452(1)(a). Accordingly, the trial court did not abuse its discretion by granting the petition and entering the February 4, 2025 order. See *In re Portus*, 325 Mich App at 381.

To the extent the trial court's decision did not strictly comply with the statutory requirements of MCL 330.1438, we conclude such noncompliance does not warrant relief in this case. Rather, we note that this Court has applied harmless-error review to consider whether instances of statutory noncompliance with the Mental Health Code necessitated relief. In *In re Eddins*, 342 Mich App 529, 538; 995 NW2d 604 (2022), this Court addressed a subject-matter jurisdiction and summary disposition challenge to a petition for continuing commitment. In that case, the petition had failed to include a description of the respondent's current condition and failed to include the results of the treatment the respondent was undergoing, both in violation of MCL 330.1473. *Id.* This Court acknowledged that the petition did not strictly comply with MCL 330.1473, but nonetheless concluded the respondent was not entitled to relief:

> Even if a faulty petition for continuing mental health treatment is filed, it does not automatically result in the deprivation of an individual's rights. Indeed, before the court may enter an order requiring continuing involuntary hospitalization or mental health treatment, the court must find, at a minimum, that the individual is a "person requiring treatment," see MCL 330.1401. In this case, the court acknowledged that the petition might be deficient, so it held a hearing and took evidence to determine whether a continuing mental health order was warranted. In doing so, the court safeguarded respondent's rights from an erroneous deprivation based on a faulty petition. At the hearing, petitioner presented testimony supporting the request for involuntary hospitalization and mental health treatment. [*In re Eddins*, 342 Mich App at 542 n 7.]

In *In re Jestila*, 345 Mich App at 354, this Court also addressed a petition filed seeking to continue a respondent's mental-health treatment. However, in that case, the respondent did not receive notice of the petition and was absent from the hearing in which the petition was substantively considered and granted. *Id.* at 345-355. In that case, this Court noted that "[t]he Michigan Supreme Court has held that civil-commitment statutes must be strictly complied with." *Id.*, citing *In re Wojtasiak*, 375 Mich 540, 544; 134 NW2d 741 (1965). The Court concluded there was a "wholesale failure by the probate court to comply with the notice and service requirements governing civil commitments, i.e., the procedural safeguards ensuring [the] respondent's rights to be present and heard[,]" which amounted to a denial of the respondent's right to due process and "was a significant error that cannot be deemed harmless." *In re Jestila*, 345 Mich App at 358-359. While these cases involve the continuing commitment of a respondent, we find their reliance on harmless-error analysis instructive in the present matter.

In this case, respondent does not expand his due-process argument beyond his assertion that he was denied his right to a speedy trial under MCL 330.1452(1)(a). "A party may not simply announce a position and leave it to this Court to make the party's arguments and search for authority to support the party's position." *Seifeddine v Jaber*, 327 Mich App 514, 519; 934 NW2d 64 (2019). Regardless, we conclude that any noncompliance with MCL 330.1438 does not

necessitate relief. Like *In re Eddins*, the trial court safeguarded respondent's rights by holding a hearing on the second petition. Respondent was notified of the second petition, was present and represented by counsel at the hearing, and participated in the proceedings. At that hearing, as subsequently explained, petitioner presented evidence that established respondent was a "person requiring treatment" under MCL 330.1401. From this record, we conclude the probate court safeguarded respondent's rights from any noncompliance during his hospitalization and respondent is not entitled to relief.

## IV. PERSON REQUIRING TREATMENT

Respondent contends that clear and convincing evidence did not support the trial court's finding that respondent was "a person requiring treatment" under MCL 330.1401(1)(a) and (1)(c). We disagree.

The trial court may order involuntary mental-health treatment if it determines that an individual has a mental illness and is a "person requiring treatment." MCL 330.1468(2). A "person requiring treatment" is, in relevant part, defined as:

> (a) An individual who has mental illness, and who as a result of that mental illness can reasonably be expected within the near future to intentionally or unintentionally seriously physically injure himself, herself, or another individual, and who has engaged in an act or acts or made significant threats that are substantially supportive of the expectation.
>
> * * *
>
> (c) An individual who has mental illness, whose judgment is so impaired by that mental illness, and whose lack of understanding of the need for treatment has caused him or her to demonstrate an unwillingness to voluntarily participate in or adhere to treatment that is necessary, on the basis of competent clinical opinion, to prevent a relapse or harmful deterioration of his or her condition, and presents a substantial risk of significant physical or mental harm to the individual or others. [MCL 330.1401.]

To satisfy the requirements of MCL 330.1401, a respondent must have a "mental illness," which is defined as "a substantial disorder of thought or mood that significantly impairs judgment, behavior, capacity to recognize reality, or ability to cope with the ordinary demands of life." MCL 330.1400(g). Under MCL 330.1461(1), "[a]n individual may not be found to require treatment unless at least [one] physician or licensed psychologist who has personally examined that individual testifies in person or by written deposition at the hearing." The requirements of MCL 330.1401 must be proven by clear and convincing evidence. MCL 330.1465. Evidence is "clear and convincing" when is it is "so clear, direct and weighty" that the fact-finder can "come to a clear conviction, without hesitancy, of the truth of the precise facts in issue." *In re ASF*, 311 Mich App 420, 429; 876 NW2d 253 (2015) (quotation marks and citation omitted).

In this case, the record reflects that respondent was a "person requiring treatment" under both MCL 330.1401(1)(a) and (1)(c). First, under MCL 330.1401(1)(a), a mentally ill individual requires treatment if the individual can "reasonably be expected within the near future to

intentionally or unintentionally seriously physically injure himself" or others and the individual has "engaged in an act or acts or made significant threats that are substantially supportive of the expectation." Although Dr. Almaat testified that respondent was not a present danger to himself or others, Dr. Almaat believed that respondent's delusions put him at a high risk "to be dangerous" to himself and others. Indeed, respondent's mental-health issues have gone unaddressed and have worsened over time. In 2022, respondent refused to comply with medication management, denied his delusions, and experienced command auditory hallucinations. By 2025, respondent filed multiple police reports alleging surveillance, sought hearing tests, and hired private investigators and forensic analysts. Respondent described recently photographing and recording individuals and cars that he believed were following him. These actions showed an escalating, delusional preoccupation that had increasingly consumed respondent's life over the past three years. Given the escalation, the hallucinations, and ongoing medical refusal, clear and convincing evidence supported a finding that respondent will, intentionally or unintentionally, cause serious physical injury to himself or others in the near future and that respondent qualified as a person requiring treatment. See MCL 330.1401(1)(a); *In re ASF*, 311 Mich App at 429.

Second, under MCL 330.1401(1)(c), an individual must have a "mental illness" that causes impaired judgment and a "lack of understanding of the need for treatment," and the individual must present "a substantial risk of significant physical or mental harm to the individual or others." In this case, Dr. Almaat testified that respondent refused medication, denied any medical diagnosis, and would not voluntarily follow treatment. Accordingly, the trial court had clear and convincing evidence demonstrating respondent's "unwillingness to voluntarily participate in or adhere to treatment." MCL 330.1401(1)(c). Additionally, respondent admitted to multiple previous hospitalizations and acknowledged signing a stipulation for mental-health treatment in 2022. These admissions, together with Dr. Almaat's opinion that respondent's delusions place him at high risk of harming himself or others, establish impaired judgment, "lack of understanding of the need for treatment," unwillingness to accept necessary care, and "a substantial risk of significant physical or mental harm" to himself or others. MCL 330.1401(1)(c). The evidence clearly and convincingly supported a finding that respondent was a person requiring treatment under MCL 330.1401(1)(c). See *In re ASF*, 311 Mich App at 429.

## V. CONCLUSION

We conclude that the trial court complied with the Mental Health Code and correctly determined that respondent was a person in need of treatment. The trial court did not abuse its discretion or otherwise err by entering the February 4, 2025 mental-health order.

Affirmed.

/s/ Michael J. Kelly
/s/ James Robert Redford
/s/ Kathleen A. Feeney

-7-